CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 10 2019

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Case No. 5:03-CR-30095 |
| | ) | |
| v. | ) | |
| | ) | |
| DIRRICK DELONT LUCAS, | ) | By: Hon. Michael F. Urbanski |
| Defendant | ) | Chief United States District Judge |

## MEMORANDUM OPINION

Dirrick Delont Lucas, represented by counsel, filed a motion to reduce his sentence pursuant to Section 404(b) of the First Step Act of 2018 ("the Act"). ECF No. 69. In 2012 Lucas discharged his underlying sentence of 120 months and began serving a term of supervised release. He was arrested on additional charges and sentenced to a term of 48 months, and also sentenced to a consecutive 60-month term for violation of the conditions of supervised release on the instant case. Lucas seeks a reduction of his original 120-month sentence under the Act. In the alternative, he seeks a reduction of his term of supervised release. The government asserts that Lucas is ineligible for consideration of a reduction in his sentence because he is not currently serving a term for a covered offense under the First Step Act and also asserts that granting him relief would serve no reasonable sentencing objective. In addition, the government argues that Lucas is not eligible for relief under the Act because the drug weight for which he was held responsible disqualifies him for relief.

For the reasons set forth below, the court finds that Lucas is eligible for a reduction in his term of incarceration based on the revocation of supervised release. However, while Lucas is eligible for First Step Act consideration, the court exercises its discretion under the Act to

**DENY** Lucas's motion to reduce the 60-month term of incarceration he is serving for a violation of the terms of his supervised release.

## BACKGROUND

On June 24, 2004, Lucas entered into a plea agreement where he pled guilty to possession with intent to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count 1) and one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (Count 3). Five other counts were dismissed. ECF No. 30. Pursuant to 21 U.S.C. §§ 846 and 841(b)(1)(A), Lucas faced a statutory sentencing range of 10 years to life on Count 1 and a statutory maximum of 10 years on Count 3. ECF No. 70.

Based on 1.49 kilograms of cocaine base, Lucas had a guidelines base offense level of 36 and received a 2-point increase for possessing a firearm in connection with narcotics trafficking and a 3-point decrease for acceptance of responsibility, giving him a subtotal offense level of 35. He also was found to qualify as a career offender, which gave him an offense level of 38, decreased by 3 points for acceptance of responsibility to 35. Thus, his total offense level was 35. He had a criminal history category of VI, making his guideline range for imprisonment 292 to 365 months. U.S.S.G. Ch. 5 Pt. A; ECF No. 70. The government filed a motion for substantial assistance on March 10, 2005. ECF No. 34.

On May 18, 2005 Lucas was sentenced to 150 months on Count 1 and 120 months on Count 3, to run concurrently, and a 5-year term of supervised release. ECF No. 40. On June 30, 2008, Lucas was granted a sentence reduction based on an amendment to the sentencing guidelines and was resentenced to a total of 120 months. ECF No. 49.

On September 25, 2012, Lucas completed his sentence and began his 5-year term of supervised release. On August 13, 2014, a petition for warrant or summons was issued for Lucas following his arrest for being a convicted felon carrying a concealed weapon and buying or receiving stolen goods. ECF No. 50. Pursuant to a Federal Rule of Criminal Procedure 11(c)(1)(C) plea agreement, on April 1, 2015 the court revoked Lucas's supervised release and sentenced him to 60 months, to run consecutively to a 48-month sentence imposed by this court in United States v. Lucas, No. 5:14-CR-038 (W.D. Va. April 2, 2015).[1]

No additional term of supervised release was imposed in the instant case. Lucas's current projected release date is December 27, 2022.

## APPLICABLE LAW

### I. First Step Act

At the time Lucas was sentenced, a violation of § 841(a)(1) carried a mandatory minimum sentence of 10 years and a maximum sentence of life imprisonment if the offense involved more than 50 grams of cocaine base, and a penalty range of 5 to 40 years if the offense involved more than 5 grams of cocaine base. 21 U.S.C. § 841(b)(1)(A) and (B) (2006). In 2010, the Fair Sentencing Act was passed, and Section 2 of the Act reduced penalties for offenses involving cocaine base by increasing the threshold drug quantities required to trigger mandatory minimum sentences under 21 U.S.C. § 841(b)(1). Fair Sentencing Act of 2010, Pub. L. No. 111-220, § 2, 124 Stat. 2372 (2010). Currently, in order to trigger the 10-years-to-life-

---

[1] Lucas pleaded guilty to possessing a firearm that was required to have been registered in the National Firearms Registration and Transfer Record, to wit: a silencer. ECF No. 21 in United States v. Lucas, No. 5:14-CR-38.

sentencing range, the offense must involve more than 280 grams of cocaine base, and to trigger the 5-to-40-year sentencing range, the offense must involve more than 28 grams of cocaine base.

The First Step Act was passed on December 21, 2018. Section 404 of the act permits a court, upon motion of the defendant or the government, or upon its own motion, to impose a reduced sentence for certain offenses in accordance with the Fair Sentencing Act of 2010, if such a reduction was not previously granted. Offenses qualify for the reduction if they were committed before August 3, 2010 and carry the statutory penalties which were modified by section 2 or 3 of the Fair Sentencing Act of 2010. First Step Act of 2018, Pub. L. No. 115-015, 132 Stat. 015 (2018).

It is undisputed that Lucas committed his offense before August 3, 2010, and his offense carries the statutory penalties which were modified by Section 2 or 3 of the Fair Sentencing Act. Nevertheless, the government asserts that because Lucas is serving a sentence related to violation of the terms of his supervised release rather than for his underlying drug conviction, he is not serving time for a covered offense under the First Step Act and this court lacks jurisdiction to consider his motion. The government further argues that no reasonable sentencing objective would be served by reducing his original sentence to allow him to receive credit against his current revocation sentence. In addition, the government argues that Lucas is not eligible for relief under the Act because the drug weight for which he was held responsible disqualifies him for relief. Finally, the government points out that even if Lucas is

entitled to relief on the sentence for his drug conviction, the 120-month sentence on the firearm conviction would be unaffected.

Lucas makes two arguments in support of his request to reduce his 60-month term of imprisonment for violation of the terms of supervised release. First, he argues that had he been sentenced when the provisions of the Fair Sentencing Act were in effect, his conviction would have fallen under 21 U.S.C. § 841(b)(1)(B) and would have had a maximum penalty of 40 years imprisonment. As a career offender with a maximum sentence of 40 years, his offense level would have been 34, decreased by 3 levels for acceptance of responsibility to 31. With a criminal history category of VI, his guidelines range would have been 188-235 months. U.S.S.G. §§ 4B1.1 and Ch. 5, Pt. A. Applying a proportionate reduction for substantial assistance would produce a sentence of 96.6 months rather than 120 months. Lucas suggests that the "overserved" time, i.e. the 24-month difference between the sentenced imposed and the revised sentence under the First Step Act, be credited toward his term of imprisonment on the supervised release violation.

In the alternative, Lucas argues that if he had been sentenced under the First Step Act, under 21 U.S.C. § 841(b)(1)(B) the offense would have had a maximum penalty of 40 years imprisonment and as such, it would have been considered a Class B felony. 18 U.S.C. § 3559. For a Class B felony, Lucas would have been subject to a maximum term of imprisonment of 3 years upon revocation of supervised release under 18 U.S.C. 3583(e)(3). Lucas asserts that a 3-year revocation sentence would have been consistent with the advisory guideline range of 33-41 months imprisonment for a Grade A violation when the defendant has a criminal history

category of VI and that his term of supervised release should have been 3 years. See U.S.S.G. § 7B1.4.

## II. Covered Offense

Under the First Step Act, a covered offense is defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by Section 2 or 3 of the Fair Sentencing Act of 2010 (Public Law 111-220; 124 Stat. 2372), that was committed before August 3, 2010." Pub. L. No. 115-015, § 404, 132 Stat. 015, 015 (2018). The government argues that the Fair Sentencing Act applies only to violations of 21 U.S.C. §§ 841(b)(1)(A), 841(b)(1)(B), and 844 and that it has no bearing on sentences imposed on supervised release revocations. Because Lucas is serving a sentence related to violation of the terms of his supervised release, pursuant to 18 U.S.C. § 3583, the government asserts that he is not serving a sentence for the underlying drug conviction and thus is not serving a sentence on a "covered offense."[2]

However, the inclusion of a term of supervised release following a sentence is part of the sentence. See 18 U.S.C. § 3583(a) ("The court, in imposing a sentence to a term of imprisonment for a felony or misdemeanor, may include as a part of the sentence a requirement that the defendant be placed on a term of supervised release after imprisonment . . . .") In addition, the Supreme Court rejected the notion that revocation of supervised release

---

[2] On November 4, 2019 Lucas filed a notice that the government changed its position on First Step Act eligibility in a case pending at the Fourth Circuit Court of Appeals. In that case, United States v. Venable, No. 19-6280 (4th Cir., filed Feb. 26, 2019), the government submitted a letter to the court advising that it was withdrawing its argument that the First Step Act does not authorize reductions in revocation terms. See ECF Nos. 75 and 75-1 in the instant case. While the court takes notice of the filing in Venable, it will decide the issues in this case based on the pleadings filed herein.

is punishment for violations of the conditions of supervised release in Cornell Johnson v. United States, 529 U.S. 694 (2000) (Cornell Johnson). Rather, postrevocation sanctions are part of the penalty for the initial offense. Id. at 700. To find that postrevocation sanctions are imposed for violations of the terms of supervised release would raise constitutional concerns.

> Although such violations often lead to reimprisonment, the violative conduct need not be criminal and need only be found by a judge under a preponderance of the evidence standard, not by a jury beyond a reasonable doubt. See 18 U.S.C. § 3583(e)(3) (1988 ed. Supp. V). Where the acts of violation are criminal in their own right, they may be the basis for separate prosecution, which would raise an issue of double jeopardy if the revocation of supervised release were also punishment for the same offense. Treating postrevocation sanctions as part of the penalty for the initial offense, however (as most courts have done), avoids these difficulties.

Id. "We therefore attribute postrevocation penalties to the original conviction." Id. at 701. See also United States v. Ketter, 908 F.3d 61, 65 (4th Cir. 2018) ("Treating custodial and supervised release terms as components of one unified sentence appropriately recognizes the interdependent relationship between incarceration and supervised release.") Accordingly, this court finds that Lucas is serving a sentence for a covered offense for purposes of the First Step Act.

**III. Drug Weight**

The government also argues that Lucas is ineligible for relief because his offense involved more that 280 grams of cocaine base and that whether a defendant is entitled to relief under the First Step Act depends on the amount of cocaine base for which he was found responsible in the PSR, rather than the amount for which he was indicted and convicted. Because Lucas was found responsible for 1.49 kilograms of cocaine base in the PSR, which

would make him subject to the 21 U.S.C. § 841(a)(1)(A) penalties, the government argues that he is not entitled to relief under the First Step Act.

The court disagrees that it is the drug weight in the PSR that determines eligibility for First Step Act relief. In Apprendi v. New Jersey, 530 U.S. 466 (2000), and Alleyne v. United States, 570 U.S. 99 (2013), the Supreme Court established that the drug weight is an element of the offense and any fact that increases a mandatory minimum penalty is an element that must be charged in an indictment and proved to a jury beyond a reasonable doubt. Under those two cases, if Lucas were sentenced today, his sentence would be based on distributing 50 grams or more of cocaine base, and not 1.49 kilograms of cocaine base.

In Apprendi, the Supreme Court held that the Sixth Amendment to the Constitution requires that any fact that increases the penalty for a crime beyond the prescribed statutory maximum, other than the fact of a prior conviction, must be submitted to a jury and proved beyond a reasonable doubt. In Alleyne, the Court applied Apprendi to the federal mandatory minimum and maximum sentencing scheme and held that because mandatory minimum sentences increase the penalty for a crime, any fact that increases the mandatory minimum is an element of the crime that must be submitted to the jury. Id. at 116 (overruling Harris v. United States, 536 U.S. 545 (2002)).

Although neither Apprendi nor Alleyne are retroactively applicable on collateral review,[3] many courts, including this one, have held that the decisions must be considered when

---

[3] See United States v. Sanders, 247 F.3d 139, 146 (4th Cir. 2001) (joining other circuits in finding that Apprendi does not apply retroactively to cases on collateral review); and United States v. Stewart, 540 Fed.Appx. 171 (4th Cir. 2013) (per curiam) (noting that Alleyne has not been made retroactively applicable to cases on collateral review).

8

a court examines a sentence under the First Step Act. See United States v. Opher, Crim. No. 00-323-09, 2019 WL 3297201 at 814 (D.N.J. July 23, 2019) (noting that courts have consistently rejected the notion that Congress legislates without regard to constitutional norms); United States v. Simons, No. 07-CR-00874, 2019 WL 1760840 at *6 (E.D.N.Y. Apr. 22, 2019) (citing Alleyne and finding that statutory penalties are determined by facts submitted to a grand jury, trial jury, or established by a guilty plea while findings by a judge may be used to determine a sentence within the statutory penalties and cannot change "the mandatory minimum sentence now applicable"); United States v. Dodd, No. 3:03-CR-18-3, 2019 WL 1529516 (S.D. Iowa, Apr. 9, 2019) (finding in a First Step Act case that "[b]oth Apprendi and Alleyne are binding on this Court for sentencings held today."); United States v. Davis, No. 07-CR-245(S)(1), 2019 WL 1054554 (W.D.N.Y. Mar. 6, 2019), appeal docketed, No. 19-874 (2nd Cir. Apr. 5, 2019) ("[I]t is the statute of conviction, not actual conduct, that controls eligibility under the First Step Act."); United States v. Stanback, 377 F.Supp.3d 618, 623 (W.D. Va. May 2, 2019) (joining other courts in finding that Apprendi and Alleyne are applicable in the context of the First Step Act); see also United States v. Laguerre, No. 5:02-CR-30098-3, 2019 WL 861417 (W.D. Va. Feb. 22, 2019) (relying without discussion on charged drug weight rather than PSR weight to find defendant eligible for relief).

Alleyne made clear that in order to preserve a defendant's Sixth Amendment right to a jury trial, any fact that increases the statutory mandatory minimum sentence is an element of the crime which must be submitted to the jury or pleaded to by the defendant. Alleyne, 570 U.S. at 116. The court in Lucas's case found him guilty of conspiracy to distribute and possess

9

with intent to distribute 50 grams or more of cocaine base, which is the amount to which he pleaded guilty. ECF No. 116. Under Alleyne, this court is not free to ignore that finding and impose a penalty based on 1.49 kilograms of cocaine base referenced in the PSR. Thus, this court finds that the appropriate drug quantity to be considered under the First Step Act is 50 grams of cocaine base.

## IV. Sentencing Objective

The government next argues that no reasonable sentencing objective would be served by reducing Lucas's original sentence, citing in support United States v. Roy Lee Johnson, 529 U.S. 53, 54 (2000) (Roy Lee Johnson). There, an offender had been serving time in federal prison on multiple felonies when two of his convictions were declared invalid. He asked that his excess prison time be credited to the supervised release term to reduce its length. Id. The Sixth Circuit Court of Appeals agreed, finding that his term of supervised release commenced not on the day he was released from prison, but on the day his lawful term of imprisonment expired. Id. at 55-56. The Supreme Court reversed and remanded, finding that the Court of Appeals "erred in treating respondent's time in prison as interchangeable with his time of supervised release." Id. at 59-60.

The Court reasoned that "[t]he objectives of supervised release would be unfulfilled if excess prison time were to offset and reduce terms of supervised release. Congress intended supervised release to assist individuals in their transition to community life. Supervised release fulfills rehabilitative ends, distinct form those served by incarceration." Id. at 60. See also United States v. Sanchez, 891 F.3d 535, 541 (4th Cir. 2018) (declining to find that a term of

supervised release was "unnecessary and unjustified" when defendant had already served an extra five years on an unconstitutional sentence and essentially was asking that excess prison time be credited to his revocation sentence).

Although Roy Lee Johnson stands for the notion that a term of supervised release cannot be offset by an overserved prison term, Cornell Johnson clarifies that once a sentence is revoked for violation of the terms of supervised release, the postrevocation penalties are part of the punishment for the underlying offense. Lucas was reincarcerated following revocation of the terms of supervised release and the court finds that reducing the term of his current incarceration would not violate Roy Lee Johnson.

Nevertheless, although it appears that Lucas is eligible for consideration of a sentence modification, the circumstances of this case compel the court to exercise its discretion and deny a reduction in Lucas's original sentence. See Sec. 404(c) of the First Step Act ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section."); see also Wright v. United States, 393 F.Supp.3d 432, 439 (E.D. Va. July 11, 2019) (finding the First Step Act grants broad discretion to the district court in providing relief); United States v. Banks, No. 1:07-00157, 2019 WL 2221620, *1 (S.D.W.V. May 22, 2019) ("[A] court is not required to reduce a sentence under the First Step Act.") (emphasis in original).

When Lucas was released to supervision in 2012, one of the mandatory conditions of supervision was that he not possess a firearm, ammunition, destructive device, or any other dangerous weapon. One of the special conditions of supervision was that he not possess a firearm or destructive device. ECF No. 40 in United States v. Lucas, No. 5:03-CR-30095.

11

Lucas violated the conditions of supervised release when he possessed an unregistered firearm, described in the PSR as a silencer and silencer components. ECF No. 41 in United States v. Lucas, No. 5:14-CR-38. In addition, in the trunk of the car, police found three knives and a garrote, described as a "strangulation weapon." Id. On the passenger seat, police found a loaded 9 mm handgun hidden between the foam pad and the metal pan of the seat close to Lucas's right leg while he was seated in the vehicle. The handgun, which had been reported stolen, had an extended barrel, which, when removed, allowed the homemade silencer to attach perfectly to the weapon. Id.

According to the sentencing guidelines, "at revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." U.S.S.G. Ch. 7 Pt. A. Lucas violated the court's trust when he possessed firearms and other dangerous weapons while on supervised release. If he were allowed to apply his overserved time to his current period of incarceration, it would undermine the purpose of supervised release, because it would greatly limit the court's ability to sanction him for violating the terms of release. Also, as a matter of policy, if prisoners entitled to First Step Act relief were allowed to "bank" time on overserved sentences to offset terms of incarceration following revocation of supervised release, it would provide a disincentive to obey the terms of supervised release. In essence, it would serve as a "get-out-of-jail-free" card and this court does not believe such a result is consistent with the federal sentencing scheme.[4]

---

[4] Moreover, in Lucas's case, the 120-month sentence for the firearm violation would be unaffected by any

## V. Reduction Based on Supervised Release Revocation

Lucas also argues that under the First Step Act, the maximum term for which he could be reincarcerated following a violation of the terms of supervised release was three years. It will be assumed for purposes of this motion only that Lucas is correct and under the First Step Act he would be entitled to a reduction of the term of incarceration for violation of supervised release. Nevertheless, for the reasons stated above, the court exercises its discretion and declines to reduce Lucas's term of incarceration.

## **CONCLUSION**

The court finds that Lucas's 5-year term of incarceration provides a sentence that is sufficient, but not greater than necessary, and accounts for the sentencing factors the court must consider pursuant to 18 U.S.C. § 3553(a), specifically deterrence, protection of the public, and respect for the law. Accordingly, the court **DENIES** Lucas's motion under the First Step Act, ECF No. 69.

An appropriate Order will be entered.

It is so **ORDERED**.

Entered: 12/10/19

/s/ Michael F. Urbanski

Michael F. Urbanski
Chief United States District Judge

---

change in the drug sentence. Therefore, even if the court were inclined to reduce Lucas's drug sentence, it could not reduce the sentence based on the firearm violation and there would be no "over-served" time to apply to the term of supervised release.